IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRANDI MATHIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20cv92 |
| | ) | |
| CASWELL COUNTY SCHOOLS | ) | |
| BOARD OF EDUCATION, | ) | |
| SANDRA CARTER, WAYNE OWEN, | ) | |
| and SHANNON GAMMON, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Before the Court are two motions to dismiss. Defendants Sandra Carter,[1] Wayne Owen,[2] and Shannon Gammon[3] (collectively, "Individual Defendants") have moved to dismiss Counts One, Four, and Five of Plaintiff's Amended Complaint pursuant to several provisions of Rule 12(b) of the Federal Rules of Civil Procedure,. (ECF No. 20.) In addition, Defendant Caswell County Schools Board of Education ("the School Board") has moved to dismiss Counts One, Two, and Three of Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 11.) For the reasons set forth below, Individual Defendants' motion is granted in part and denied in part; and the School Board's motion is denied.

---

[1] Defendant Carter is the superintendent of the Caswell County school system.
[2] Defendant Owen is a member of the Caswell County School Board of Education.
[3] Defendant Gammon is the Assistant Principal of Bartlett Yancey High School.

## I. Factual Background

Plaintiff was formerly employed as a teacher by Caswell County Schools and worked at Bartlett Yancey High School ("Bartlett High" or "BYHS") for approximately twelve (12) years. (ECF No. 9 ¶ 30.) On March 21, 2019, while still teaching at Bartlett High, Plaintiff attended a professional development workshop that with several other teachers that was sponsored by Piedmont Triad Education Consortium ("PTEC"). (*Id.* ¶ 32.) After the conclusion of the workshop, the executive director of PTEC informed Defendant Carter that allegations had been made regarding the behavior of several Caswell County teachers, including Plaintiff. (*Id.* ¶¶ 35–36.)

On March 25, 2019, Defendant Carter learned that it was alleged that Plaintiff and two other Caswell County teachers were drinking margaritas during lunch and subsequently were "loud, rude, and disrespectful" in the session following lunch. (*Id.* ¶¶ 34, 37.) After receiving this information, Defendant Carter apologized to the workshop leader via email, (*id.* ¶ 40), and then drove to Bartlett High to meet with Plaintiff's immediate supervisor, the principal, to share the information she received, (*id.* ¶ 45). After this meeting, Defendant Carter then spoke with Plaintiff and informed her of the allegations. (*Id.* ¶ 49.) Plaintiff assured Defendant Carter that "she had not behaved rudely or disrespectfully during the workshop, had not left the workshop at 1:50 PM, and was not drinking margaritas at lunch." (*Id.* ¶ 50.) Plaintiff provided a handwritten statement to the same effect, (*id.* ¶ 51), and Defendant Carter indicated that she would investigate the allegations, (*id.* ¶ 53). Plaintiff alleges that Defendant Carter never conducted any investigation, despite Plaintiff's direct supervisor having attested to her professionalism. (*Id.*)

2

Later on the evening of March 25th, the School Board held its monthly meeting and, during that meeting, Defendant Carter revealed the allegations concerning Plaintiff and explained that she had apologized to the workshop facilitator, was placing a letter of reprimand in Plaintiff's personnel file, and would be imposing a disciplinary suspension without pay on Plaintiff. (*Id.* ¶ 57.) Plaintiff alleges that, following Defendant Carter's imposition of suspension without pay, Defendant Owen and other Board members informed a number of third parties of her suspension. (*Id.* ¶¶ 59–60.) On March 27, 2019, Defendant Carter gave Plaintiff a letter of reprimand and informed her that it would be placed in her personnel file. (*Id.* ¶ 64.) The letter indicated that Plaintiff was suspended without pay on March 28, 2019, (*id.* ¶ 65), and Defendant Carter informed Plaintiff that she would be reporting her suspension to the North Carolina Department of Public Instruction, (*id.* ¶ 66.) The letter also informed Plaintiff of her right to appeal, but it did not provide any timeline for appeal or the process. (*Id.* ¶ 72.) In accordance with the letter, Plaintiff did not go to work on March 28, 2019, and further was unable to work on March 29, 2019, as a result of the stress caused by her suspension. (*Id.* ¶ 75.) Plaintiff alleges that, following her suspension, Defendant Gammon informed multiple third parties of her discipline. (*Id.* ¶¶ 77–78.)

On April 22, 2019, after consulting with an attorney, Plaintiff appealed her suspension. (*Id.* ¶¶ 85, 87.) The appeal was heard on June 19, 2019. (*Id.* ¶ 91.) At the hearing, Defendant Carter, despite having given Plaintiff a letter of her suspension on March 27, 2019 stating that she was suspended without pay on March 28, 2019, testified that Plaintiff had not been suspended without pay. (*Id.* ¶ 92.) Plaintiff alleges that the hearing officer found that Defendant Carter did not follow the statute and that Plaintiff was not afforded procedural due

3

process when she was suspended. (*Id.* ¶ 98.) According to the Amended Complaint, it was after this appeal hearing and the finding that she had not been accorded due process that Defendant Carter gave Plaintiff notice of her intent to recommend that Plaintiff be suspended without pay and the School Board agreed to entertain the recommendation. (*Id.* ¶¶ 101, 106.) Ultimately Plaintiff resigned from her teaching position before the Board reached a determination on Defendant Carter's recommendation of discipline. (*Id.* ¶ 104.)

## II. Procedural History

Plaintiff initiated this lawsuit against the School Board on January 28, 2020, alleging deprivation of procedural due process in violation of 42 U.S.C. § 1983 and slander per se. (ECF No. 1.) Following the filing of a motion to dismiss by the School Board on March 30, 2020, (ECF No. 7), Plaintiff, in response, filed an Amended Complaint asserting additional claims and adding parties on April 17, 2020. (ECF No. 9.) In her Amended Complaint, which is the operative complaint here, Plaintiff sets forth five claims as follows: Count I—a claim against the School Board and Defendant Carter for violation of her procedural due process in violation of § 1983, (*id.* ¶¶ 113–26); Counts II and III—claims against the School Board for failure to train and a failure to supervise; (*id.* ¶¶ 127–43); Count IV—a claim against Individual Defendants for slander per se, (*id.* ¶¶ 144–159); and Count V—a claim against Individual Defendants for negligence, (*id.* ¶¶ 160–176.).

The School Board, on May 15, 2020, filed one of the instant motions to dismiss Plaintiff's Amended Complaint. (ECF. No. 11.) Individual Defendants, on July 2, 2020, filed the second motion to dismiss Plaintiff's Amended Complaint. (ECF No. 20.) Both motions are currently before this Court.

4

Each of the Defendants assert a variety of theories for dismissal as follows:

A. To begin, Individual Defendants' motion first asserts that all claims against them (Counts I, IV, and V) should be dismissed under Rules 12(b)(2), (4), and (5) for lack of personal jurisdiction, insufficient process, and insufficient service of process based on their assertion that they were each served with a copy of the Amended Complaint on June 4, 2020 which was not accompanied by a summons. (ECF No. 21 at 10, 12.) This basis for dismissal has been resolved by Order of the Court which will be discussed briefly later in this Opinion.

B. Individual Defendants next move to dismiss the § 1983 claim against Defendant Carter (Count I) pursuant to Rules 12(b)(1) and (6) asserting that Defendant Carter is entitled to qualified immunity and that Plaintiff has failed to state a claim. (*Id.* at 10.)

C. Individual Defendants also move to dismiss Plaintiff's slander per se claim, (Count IV) argue that it is time-barred and therefore should be dismissed pursuant to Rule 12(b)(1). (*Id.*)

D. Finally, with respect to Individual Defendants' motion, they move to dismiss Plaintiff's claims of slander per se and negligence pursuant to Rule 12(b)(6) for failure to state a claim and further on the theory that they enjoy governmental immunity. (*Id.* at 10–11.)

E. The School Board moves to dismiss all of Plaintiff's claims against it (Counts I through III) pursuant to Rule 12(b)(6) for failure to state a claim. (ECF No. 11 at 1–2.)

## III.  INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

### A.  Failure to Effectuate Service

The Court will first address Individual Defendants' contention that this Court does not have personal jurisdiction over them due to insufficient process and insufficient service of process.  Federal Rule of Civil Procedure 4(c) places the burden on the plaintiff to effect proper service.  *See* Fed. R. Civ. P. 4(c)(1).  Specifically, Rule 4(c)(1) provides that "[a] summons must be served with a copy of the complaint."  *Id.*  Individual Defendants move to dismiss all claims brought against them, individually and collectively, for insufficient process and insufficient service of process based on their assertion that they were all served with a copy of the Amended Complaint on June 4, 2020 which was not accompanied by a summons.  (ECF No. 21 at 11–12.)  Plaintiff counters that Individual Defendants were served with the Amended Complaint through Counsel on April 17, 2020, and that each received another copy of the Amended Complaint and a Summons on July 16, 2020.  (ECF No. 28 at 6.)

This Court, on August 20, 2020, and subsequent to Defendants' filing of their motion to dismiss based on insufficiency of process and service, retroactively extended the deadline for service of process until July 29, 2020, thereby deeming the July 16, 2020 service timely made.  (*See* Text Order dated Aug. 20, 2020.)  Each Defendant has therefore been properly served, and Individual Defendants do not appear to address this argument further in their reply brief.  (*See* ECF No. 31.)  Individual Defendants' motion, to the extent that its asserts lack of personal jurisdiction due to insufficient process and service of process, will therefore be denied.

## B. Qualified Immunity and Failure to State a Claim as to Count I

Next, Individual Defendants assert that Count I of the Amended Complaint should be dismissed with respect to Defendant Carter under Rules 12(b)(1) and 12(b)(6) because "as a public official, Dr. Carter is entitled to qualified immunity for claims made against her based on her official actions, and Plaintiff fails to plausibly allege the existence of any constitutional injury." (ECF No. 21 at 10.)

Pursuant to the doctrine of qualified immunity, government officials are shielded from liability for civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As qualified immunity "is an *immunity from suit* rather than a mere defense to liability," the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). However, a defendant who raises qualified immunity in a 12(b)(6) motion "faces a formidable hurdle": because dismissal at this early stage "is appropriate only if a plaintiff fails to state a claim that is *plausible* on its face," the defense "is usually not successful." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).

In an inquiry into whether a defendant is entitled to qualified immunity, the Court must follow the two-step process articulated in *Saucier v. Katz*.[4] *See* 533 U.S. 194, 201 (2001). First, the Court decides "whether a constitutional violation occurred." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). Second, the Court must examine "whether the right violated was clearly established"—that is, "sufficiently clear that every reasonable official would understand" that his behavior violated the right at issue. *See Henry*, 652 F.3d at 531, 534; *see also Yates v. Terry*, 817 F.3d 877, 887 (4th Cir. 2016) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). This standard does "not require a case directly on point." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Rather, "[w]hat matters is that it would be clear to a reasonable officer that his or her conduct was unlawful in the particular situation that he or she confronted." *Livingston v. Kehagias*, 803 F. App'x 673, 679 (4th Cir. 2020) (internal quotation omitted); *see also Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (per curiam). To overcome a qualified immunity defense, a plaintiff must prevail at both *Saucier* steps. *See Saucier*, 533 U.S. at 201.

### 1. *Constitutional Violation*

The Court first turns to the issue of whether Plaintiff has properly alleged a constitutional violation. The plaintiff bears the burden of proof on the first question—i.e., whether a constitutional violation occurred. *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993) ("Once the defendant raises a qualified immunity defense, the plaintiff carries the

---

[4] The Court has discretion to address each prong in the order "that will best facilitate the fair and efficient disposition of each case." *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)).

burden of showing that the defendant's alleged conduct violated the law"). Plaintiff alleges that Carter's actions constitute a violation of 42 U.S.C. § 1983 by depriving her of her due process rights under the Fourteenth Amendment. (ECF No. 9 ¶¶ 113–26.)

"The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. Protected interests in property are normally 'not created by the Constitution.'" *Goss v. Lopez*, 419 U.S. 565, 572 (1975). As such, to have a protected property interest, an individual "must be entitled to a benefit created and defined by a source independent of the Constitution, such as state law." *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1141 (4th Cir. 1990) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). In this instant matter, Plaintiff has alleged that she has a property interest in: (1) her employment as a public teacher and in her career status, (ECF No. 9 ¶ 115), and (2) the procedure that is required prior to suspending a career status teacher pursuant to North Carolina General Statute § 115C-325(f)(2), (*id.* ¶ 116). Plaintiff has also alleged that she has a liberty interest in "her good name, reputation, honor, or integrity." (*Id.* ¶ 117.) To prevail on a procedural due process claim, plaintiff must establish (i) that she possessed a protected interest, (ii) that the state or its agents deprived her of this interest, and (iii) that this deprivation was effectuated without constitutionally sufficient process. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). The Court will address each of Plaintiff's alleged constitutional interests in turn.

First, with respect to Plaintiff's alleged property interest in her employment as a public-school teacher, "[a] property interest in employment can . . . be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be

9

decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976). North Carolina law plainly supports the conclusion that Plaintiff possessed property rights in continued employment. *See* N.C. Gen Stat. § 115C-325. Plaintiff has alleged that she was deprived of her interest in employment. Defendants argue, however, that "[a]n employee's voluntary resignation cannot support an action for violations of procedural due process," and cites to *Stone v. University of Maryland. Medical System Corporation*, 855 F.2d 167 (4th Cir. 1988), in support of this contention. (ECF No. 21 at 15.) However, *Stone* also provides that if an employee's resignation was "so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause." 855 F.2d at 173. In this instant matter, while Plaintiff acknowledges she resigned, she alleges that she was effectively forced to do so as a result of actions by the Board and Defendant Carter. (ECF No. 9 ¶ 104.) This is sufficient to allege that her resignation was involuntary, amounting to a constructive discharge. *See Stone*, 855 F.2d at 173–74. As such, Plaintiff has pleaded sufficient allegations to state that she was deprived of her property interest in employment.

Next, with respect to Plaintiff's alleged property interests in the procedural protections under North Carolina General Statute 115C-325(f)(2), Defendant argues that Plaintiff cannot assert a property interest in the procedural protections she is afforded under state law. (ECF No. 21 at 16.) Here, while Plaintiff did expressly allege a property right in the procedural process afforded to career teachers under North Carolina law, the Fourth Circuit has not made clear whether procedural interests are themselves property rights to be enforced in the name of the Constitution. *See Garraghty v. Va., Dep't of Corr.*, 52 F.3d 1274, 1284–85 (4th Cir. 1995).

Case 1:20-cv-00092-LCB-JLW   Document 32   Filed 03/23/21   Page 10 of 30

However, the Fourth Circuit has discussed findings in other circuits reasoning that state procedures do not create independent substantive property rights in the procedures. *Id.* (providing an overview of other circuit's treatment of this argument).

Even assuming Plaintiff has alleged facts sufficient to make out a claim that Defendants have violated state procedural rights in refusing to follow the discipline procedures set forth in North Carolina law, a violation of disciplinary procedures guaranteed under state law does not necessarily constitute a failure to provide adequate due process under the standards of the U.S. Constitution. As the Fourth Circuit has made clear, so long as "minimal [Fourteenth Amendment] due process requirements of notice and hearing have been met," a claim that "an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations." *Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 227 (4th Cir. 1984). In other words, "the [F]ourteenth [A]mendment does not require a local school board to adhere to its own guidelines as long as minimum due process is accorded." *Id.* at 226–27.

The plaintiff in *Goodrich,* a tenured teacher, was provided only two interim conferences rather than the three required by the School Board's evaluation procedures. *Id.* at 226. Nonetheless, the *Fourth Circuit* concluded that no constitutional violation of due process occurred, as the plaintiff in that case was provided the constitutionally guaranteed level of process before she was terminated, namely an "adequate notice, a specification of the charges against her, and a hearing at which she was able to present her defense." *Id.* at 227. In short, *Goodrich* stands for the sensible proposition that "the enforcement of state regulations . . . is

11

to be done through the state system and not in an action under 42 U.S.C. §§ 1981 and 1983, where no federal constitutional guarantees have been violated." *Id.*

In this instant matter, Plaintiff alleges that she had a right to certain state statutory procedures in response to Defendant Carter's decision to suspend her without pay. However, this is not a constitutionally protected right sufficient to support a due process claim. While Plaintiff points to the hearing officer's finding that due process was violated, the process required by the Due Process Clause is not measured by procedures provided for by state law. *Id..* Rather, the minimum process she must be provided to satisfy the Due Process Clause is notice and some kind of hearing before she is terminated. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 546 (1985). As such, Plaintiff has stated sufficient allegations supporting a claim that she has been denied such process as she was notified of a hearing but was forced to resign before the hearing occurred.

Finally, with respect to Plaintiff's liberty interest allegation, a liberty interest is implicated where "a person's good name, reputation, honor, or integrity is at stake" at the hand of the government. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *see also Sciolino v. City of Newport News*, 480 F.3d 642, 645 (4th Cir. 2007). While, "injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest," *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 628 (4th Cir. 2002), the Fourth Circuit has nevertheless held that a reputational injury is actionable if there is even "a likelihood that prospective employers or members of the public [will] see the damaging information," *Sciolino*, 480 F.3d at 645. The Supreme Court has acknowledged that " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to [her],

12

notice and an opportunity to be heard are essential.'" *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972). The Court stated that "[t]he purpose of such notice and hearing is to provide the person an opportunity to clear his name." *Id.* 408 U.S. at 573 n. 12.

In order to state a claim for violation of the liberty interest in her good name and reputation, plaintiff must allege facts sufficient to show: (i) that "[her] superiors made charges against her that might seriously damage [her] standing and associations in [her] community or otherwise imposed on [her] a stigma or other disability that foreclosed [her] freedom to take advantage of other employment opportunities," (ii) "that those charges were made public by [her] employer," (iii) that the charges were false, and (iv) that the stigmatizing remarks were "made in the course of a discharge or significant demotion." *Stone,* 855 F.2d at 172 n.5 (internal citations and quotations omitted).

With respect to the first element, Plaintiff has alleged that, due to defendant Carter's actions, members of the public were notified of the allegations regarding the suspension and the reason for it which affected her standing in the community and in particular the educational community. (*See e.g.*, ECF No. 9 ¶¶ 80, 157) With respect to the second element, Plaintiff has alleged that "a disciplinary suspension without pay is not confidential information in the teacher's personnel file" and that it is open for public inspection. (*Id.* ¶ 71.) Plaintiff has also alleged sufficient facts to satisfy element three in that that she contends she did not act in the manner described as being a reason for her suspension. (*Id.* ¶ 50.) With regards to the final element, Plaintiff alleges that the Board and Defendant's Carter's left her with "no choice" but to resign. (*Id.* ¶ 104.)

Viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, as this Court is required to do at this stage of the litigation, the Court finds that she has alleged sufficient facts to survive Defendant's motion with respect to her claim of deprivation of property interests in her employment and procedural protection under North Carolina law and a liberty interest in her good name and reputation by Defendant Carter. Next, the Court will evaluate whether Plaintiff's constitutional rights were clearly established at the time of Defendant Carter's actions.

### 2. *Clearly Established Right*

The inquiry of whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Saucier*, 533 U.S. at 201. The law is clearly established for qualified immunity purposes "not only when 'the very action in question has previously been held unlawful,' but also when 'pre-existing law' makes the unlawfulness of the act 'apparent.'" *Meeker v. Edmundson*, 415 F.3d 317, 323 (4th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Individual Defendants assert that "no such rights were clearly established such that it would have been clear to Dr. Carter that her 'conduct was unlawful in the situation she confronted.'" (ECF No. 31 at 4 (citation omitted).) Individual Defendants further argue that "in light of the fact that the proposed disciplinary action involved a one-day suspension without pay and not a possible discharge, termination, or demotion, it would also not have been clear to Dr. Carter" that her actions were unconstitutional. (*Id.* at 5.) Defendants points to *Durham v. Horner*, 690 F.3d 183, 190 (4th Cir. 2012), in support of their contention that the

Case 1:20-cv-00092-LCB-JLW   Document 32   Filed 03/23/21   Page 14 of 30

qualified immunity standard provides room for mistaken judgments and "protects public officials from bad guesses in gray areas." (ECF No. 31 at 5.) On the other hand, Plaintiff contends that Defendant Carter is not entitled to qualified immunity because her right to a hearing was a clearly established statutory right. (ECF No. 28 at 8.)

The appropriate question the Court must consider is whether there was pre-existing law which would have put a reasonable superintendent on notice that suspending a career teacher without pay before undergoing the proper statutorily prescribed channels was an unconstitutional action at the time the alleged violation occurred. To be clearly established, the statutory or constitutional question must have been placed beyond debate. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Here, Plaintiff's Amended Complaint alleges that North Carolina's General Statutes provide a specific process that certain procedures must be followed before a tenured teacher is suspended without pay and Carter did not adhere to those clear procedures. (ECF No. 9 ¶¶ 67, 68.) Viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, and resolving all inferences in her favor, the Court finds that Plaintiff has pleaded sufficient facts to state that her statutory right to a hearing was clearly established.

Construing the allegations in the light most favorable to Plaintiff, the Amended Complaint contains sufficient allegations to plausibly incorporate her claims for violation of her property interests and liberty interest to Defendant Carter's conduct. This includes the allegations that Defendant Carter's actions led to her involuntary resignation before she was afforded a hearing and that those actions also affected her standing in the community by making the public aware of allegations against her in a way that damages her good name,

15

reputation, honor, or integrity.  As such, the Court finds that Plaintiff has sufficiently stated a claim of violation of procedural due process pursuant to § 1983 against Defendant Carter.  Further, the Court denies Individual Defendants' motion to dismiss Plaintiff's § 1983 claim against Defendant Carter based on the defense of qualified immunity.

### C.  Individual Defendants' Motion to Dismiss Plaintiff's Tort Claims

Individual Defendants have moved to dismiss Plaintiff's slander per se and negligence claims (Counts IV and V, respectively) against them pursuant to Rules 12(b)(1) and (6).  With respect to Plaintiff's claim for slander, Individual Defendants argue that such claim should be dismissed because it was time-barred and fails to relate back to Plaintiff's original complaint. (ECF No. 21 at 17.)  With respect to both the slander and negligence claims, Defendants argue that they are entitled to public official immunity, (*id.* at 19–20), and that Plaintiff has failed to allege sufficient facts to state a claim, (*id.* at 21–23).  The Court will address each of these arguments in turn.

#### 1.  *Whether Plaintiff's Slander Per Se Claim is Untimely*

The Court will first address Individual Defendants' argument that Plaintiff's claim for slander per se is untimely because it was brought after the statute of limitations ran and does not relate back to her original complaint.  Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint and not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.  *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996).  One such defense is that of a statute of limitation.  *See id.*  Plaintiff's slander per se claim against Individual Defendants is subject to a

16

one-year statute of limitations. *See* N.C. Gen. Stat. § 1-54(3). Thus, unless the Amended Complaint—filed after the statute of limitations ran—relates back to the date of the original filing, it will be barred and subject to dismissal. *See Brooks*, 85 F.3d at 181 (noting that dismissal is the appropriate remedy when a claim is time-barred).

Rule 15(c) of the Federal Rules of Civil Procedure, which governs name-changing amendments, provides in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

Individual Defendants assert that the alleged slanderous statements at issue occurred prior to April 1, 2019, and therefore, unless Plaintiff's slander claim related back to her original filing, it is barred by the statute of limitations. (ECF No. 21 at 18.) Plaintiff does not contest that the statements at issue occurred prior to April 1, 2019, rather she asserts that her Amended Complaint relates back to her original filing and satisfies Rule 15(c). (ECF No. 28 at 13.) The

parties disagree whether the third requirement of Rule 15(c) has been met. With respect to this requirement—whether Individual Defendants received notice within the period proscribed for serving the summons and complaint—Individual Defendants argue that it would only be met if these defendants received notice of the action by April 28, 2020. (ECF No. 21 at 19.) Plaintiff argues, on the other hand, that "Defendants received a copy of the Amended Complaint through their respective counsel on April 17, 2020," within 90 days of the filing of the Amended Complaint and that the Amended Complaint relied on the same conduct outlined in the original complaint and therefore related back. (*See* ECF No. 28 at 13–15.) In response, Individual Defendants assert that even if they received notice through their attorney on April 17, the claim is still untimely under the relevant statute of limitations and fails to relate back to Plaintiff's original complaint because Plaintiff has made no contention that her failure to bring her slander per se claim earlier was due to a mistake of the proper party's identity. (ECF No. 31 at 9.) The question the Court must determine is whether the copy of the Amended Complaint served on Counsel on April 17, 2020 satisfied the notice requirement under Rule 15(c) to allow the Amended Complaint to relate back to Plaintiff's original complaint that was filed on January 28, 2020 so as to deem her slander per se claim timely filed.

Notice within this prescribed time period may be either formal or informal. *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989). Indeed, "the relation-back doctrine does not require a showing that the actual complaint or summons was served upon the party affected by the amendment." *Stokes v. Harris*, No. 1:10CV935, 2013 WL 1212788, at *6 (M.D.N.C. Mar. 25, 2013) (quoting *Bruno v. Paulison*, No. RDB 08–0494, 2009

WL 377300, at *4 (D.Md. Feb.12, 2009)).  Nevertheless, Rule 15(c) "requires not only notice of the institution of an action but also notice of the possibility that the putative new defendant may be a defendant in that action."  *W. Contracting Corp.*, 885 F.2d at 1201.

In the instant matter, Plaintiff's original complaint was filed on January 28, 2020, and Individual Defendants were served between June 4 and June 6, 2020.  The original complaint does not name the Individual Defendants as Defendants, even if their alleged actions were included in the original pleadings.  Thus the appropriate inquiry is whether Individual Defendants received notice of the institution of this action and the possibility that they may be a defendant in this action, either formally or informally, between the filing of the original complaint and the expiration of the ninety-day period on April 28, 2020.  Review of the record indicates that Individual Defendants did not receive formal notice of the claims against them, as they were not served until early June.  However, because informal notice is also sufficient, the Court must determine whether they received informal notice within the ninety-day time period.

Notice may be imputed to defendants through the "shared attorney theory" which is "based on the premise that when an originally named party and the party sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action."  *Boatwright v. Good*, No. 1:02CV209–C, 2003 WL 22231194, at *2 (W.D.N.C. Aug. 6, 2003).  "Courts . . . have found constructive notice when the new defendant is represented by the same attorney as the original defendants." 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1498.1 (3d ed.).  For example, the Western District of Virginia has stated that a shared attorney is a "substantial factor in favor

19

of relating the date of the amended complaint back to the date of the original complaint." *Ross v. Franklin Cnty. Dep't of Soc. Servs.*, 186 F. Supp. 3d 526, 532 (W.D. Va. 2016).

Several other courts have also relied upon the "shared attorney" method to impute notice and allow relation back when a proposed amended complaint seeks to add a new defendant. *See Waters v. Geo Grp., Inc.*, No. 2:15CV282, 2016 WL 4373717, at *7 (E.D. Va. Aug. 10, 2016) (compiling cases). Of note, "[t]he relevant inquiry for determining whether such constructive notice should be based on 'sharing of counsel' is whether counsel 'knew or should have known' within the limitations period that the additional defendants would be added." *Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 07–CV–8828 (KMK), 2009 WL 3151200, at *13 (S.D.N.Y. Sept. 29, 2009) (quoting *Samuels v. Dalsheim*, No. 81–CV–7050, 1995 WL 1081308, at *14 (S.D.N.Y. Aug. 22, 1995)).

Here, the shared attorney had notice of the claims against Individual Defendants as of April 17, 2020. Even if Individual Defendants did have notice on the date that their attorney received notice of the filing, this likewise fell beyond the statute of limitations. Based on the allegations in the Amended Complaint, the statute of limitations on Plaintiff's slander per se claims expired between March 25 and April 1, 2020.

Plaintiff's position with respect to the second component of the third element likewise does not fare well. In addition to providing adequate notice, it is required that the added parties "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(C)(ii). Plaintiff has not established this element. In the original complaint, with respect to her slander claim,

Plaintiff alleged that each of the Individual Defendants acted "as agents of the Board," not as individuals. (ECF No. 1 ¶¶ 103, 106.) Plaintiff makes no contention that her failure to timely bring her slander per se claim against Individual Defendants was due to a "mistake concerning the proper party's identity" or that the Individual Defendants knew or should have known that action would be brought against them. As such, Plaintiff's slander per se claim is untimely under Rule 15 and therefore does not relate back to the original complaint. Accordingly, Plaintiff's slander per se claim is barred by the statute of limitations and will be dismissed.

### 2. *Plaintiff's Negligence Claim*

Individual Defendants next argue that Plaintiff fails to state a claim of negligence pursuant to Rule 12(b)(6). Under North Carolina law, to assert a claim for negligence a Plaintiff must allege "(1) the defendant owed the plaintiff a duty of reasonable care, (2) the defendant breached that duty, (3) the defendant's breach was an actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages as the result of the defendant's breach." *Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 6 (N.C. App. 2012). Here the parties dispute the fourth element—whether Plaintiff has adequately alleged that she suffered damages as a result of Defendants' breach.

Specifically, Defendants argue that "Plaintiff entirely fails to allege any cognizable damages resulting from [Defendants'] negligence." (ECF No. 21 at 23.) Plaintiff, on the other hand, asserts that the Amended Complaint alleges that "she suffered psychological and emotional distress, loss of standing in her community, and damage to her reputation and was

21

forced to surrender her protected property interests in her employment as [a] public school teacher with career status." (ECF No. 28 at 25–26.)

In her Amended Complaint, Plaintiff alleges that "[a]s a direct and proximate result of" each of the Individual Defendants' negligence she suffered "harm to her protected property interests in her employment as public school teacher and in her career status; protected property interests in the following of procedural protections under N.C. Gen. Stat. § 115C-325(f)(2) for career status teacher; and a liberty interest in her good name, reputation, honor, and integrity." (ECF No. 9 ¶¶ 164, 167, 172, 176.) Plaintiff also alleges that as a result of learning she would be suspended without pay, she was unable to work "due to the stress caused by the short-term and long-term implications of the unlawful suspension on her reputation and career." (*Id.* ¶ 75.)

With respect to these harms Plaintiff alleges she suffered, Individual Defendants argue that Plaintiff's allegations that her "constitutional rights were violated, without more, do not satisfy the requirement that Plaintiff allege 'actual loss' arising from the alleged negligence on the part of the defendants." (ECF No. 21 at 23.) Despite this assertion, Defendants offer no authority to support their contention that Plaintiff must allege harm beyond constitutional violations. Even so, aside from the constitutional violations Plaintiff alleges she suffered, she also alleges that she suffered so much stress that she was required to work from home on the day after her alleged suspension without pay. (ECF No. 9 ¶ 75.) As such, viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, she has plausibly stated that she suffered a harm and as such has plausibly alleged a claim for negligence against all Individual Defendants.

22

Finally, Individual Defendants argue that public official immunity bars Plaintiff's negligence claim against them. (ECF No. 21 at 19–20.) Plaintiff, on the other hand contends that each Defendant sued in his or her individual capacity is not entitled to immunity "as each acted outside the scope of their duties and with malice." (ECF No. 28 at 10.) Under North Carolina law, "[a] public official may only be held personally liable when [his or her] tortious conduct falls within one of the immunity exceptions: [1] the conduct is malicious; [2] the conduct is corrupt; or [3] the conduct is outside the scope of official authority." *Mabrey v. Smith*, 548 S.E.2d 183, 186 (N.C. App. 2001).

In the Amended Complaint, Plaintiff expressly alleges that several of Individual Defendants' actions were conducted outside of the scope of their authority and duties or were done maliciously and in bad faith. Specifically, Plaintiff alleges that "[Defendant Owen], acting outside the scope of his authority and duties, informed his family, including Assistant Principal Gammon, that Ms. Mathis was receiving a disciplinary suspension without pay." (ECF No. 9 ¶ 59.) Plaintiff also alleges that Defendant Owen published a false statement maliciously and in bad faith. (*Id.* ¶¶ 150–51) With respect to Defendant Gammon, Plaintiff alleges that she acted outside of the scope of her authority and duties by reporting "information about Ms. Mathis's discipline to the School Resource Officer at BYHS on March 29, 2019" and by informing other Caswell County School employees and third parties that Plaintiff was receiving a disciplinary suspension. (*Id.* ¶¶ 77, 78.) Plaintiff also alleges that Defendant Gammon published the statements maliciously and in bad faith. (*Id.* ¶ 154.) Further, Plaintiff alleges that Defendant Carter, maliciously and in bad faith, published a statement regarding disciplinary action against Plaintiff. (*Id.* ¶¶ 146, 148, 149.)

23

Viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, the Court is unable to conclude that Defendants are entitled to public official immunity as a matter of law at the motion to dismiss stage. As Plaintiff has pleaded sufficient facts to state a claim for negligence against each Individual Defendant, their motion to dismiss Plaintiff's negligence claim will be denied.

## IV. The School Board's Motion to Dismiss

Plaintiff has alleged three § 1983 claims against the Board: (1) violation of procedural due process; (2) failure to train; and (3) failure to supervise. (*Id.* ¶¶ 113–43.) The School Board moves to dismiss all three claims against it pursuant to Rule 12(b)(6). (ECF No. 11.) Specifically, the School Board argues that all claims against it should be dismissed because "Plaintiff has failed to plausibly allege (1) that [she] suffered a cognizable deprivation of either property or liberty rights without adequate due process or (2) that any deprivation was caused by 'an official policy or custom' that would impute liability to the Board." (ECF No. 12 at 10.) Plaintiff argues that the School Board "attempts to argue the merits of the constitutional violations of Ms. Mathis' substantive and procedural due process rights by pointing to facts still at issue." (ECF No. 15 at 9.) The Court will address each of Plaintiff's § 1983 claims in turn.

### A. Procedural Due Process

"To establish municipal liability under § 1983, the plaintiff must be able to show that the execution of a municipal policy or custom inflicts an injury." *Hughes v. Halifax Cnty. Sch. Bd.*, 855 F.2d 183, 185 (4th Cir. 1988) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978)). Section 1983 claims are not subject to a heighted pleading standard

Case 1:20-cv-00092-LCB-JLW   Document 32   Filed 03/23/21   Page 24 of 30

paralleling the rigors of proof demanded on the merits. *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167–68 (1993)).

In the Amended Complaint, Plaintiff alleges that the School Board had a pattern of failing to train or supervise Defendant Carter which resulted in the harm to her property interests and her liberty interest that the Court discussed at length above. (ECF No. 9 ¶ 104.) Plaintiff also alleges that the "Board established a custom, policy, and practice of denying procedural due process to CCS' employees in disciplinary proceedings." (*Id.* ¶ 123.) Specifically Plaintiff alleges that the Board's custom or policy was demonstrated by: "[w]ithholding pay from at least two (2) [Caswell County] teachers . . . after Superintendent Carter illegally imposed a disciplinary suspension without pay" and "[r]atifying the actions of Superintendent Carter by allowing her to impose disciplinary suspension without pay on at least four separate [Caswell County] teachers." (*Id.*) Construing the factual allegations in the Amended Complaint, in the light most favorable to Plaintiff, the Court determines that she has alleged sufficient facts to state a § 1983 claim against the School Board. As such, the School Board's motion will be denied with respect to Count I.

## B. Plaintiff's Failure to Train Claim

The School Board argues that Plaintiff's failure to train claim against it should be dismissed because "(1) she does not plausibly allege constitutional violations by subordinates of the Board and (2) she does not plausibly allege that the Board was 'deliberately indifferent' to the risk of such violations." (ECF No. 12 at 20.) The Court has already addressed the first

Case 1:20-cv-00092-LCB-JLW   Document 32   Filed 03/23/21   Page 25 of 30

arm of the School Board's argument, so it will now turn to the next, that Plaintiff has failed to "adequately allege that any omission amounted to deliberate indifference." (*Id.* at 21).

A school board can be liable under § 1983 for failure to train if its failure to train its employees demonstrates a deliberate indifference to a plaintiff's constitutional rights.[5] *Cf. Jordan v. Jackson*, 15 F.3d at 341 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "[O]nly if, 'in light of the duties assigned to specific . . . employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of the constitutional rights,' can [a school board] reasonably 'be said to have been deliberately indifferent to that need.'" *Id.* (quoting *City of Canton*, 489 U.S. at 390). In other words, "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice . . . can a [school board] be liable for such failure under § 1983." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000) (quoting *City of Canton*, 489 U.S. at 389). Mere negligence cannot suffice to impose § 1983 liability for alleged failure to train. *Jordan*, 15 F.3d at 341. "Moreover, neither a policy or custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone." *Id.*

A plaintiff may allege the deliberate indifference of the failure to train claim by alleging that policymakers were aware of and acquiesced in a pattern of constitutional violations and where a supervisor failed to train its employees concerning "an obvious constitutional duty that the particular employees are certain to face." *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014) (quoting *Brown v. Mitchell*, 308 F.Supp.2d 682, 704 (E.D.Va. 2004)).

---

[5] School boards and municipalities are indistinguishable for the purposes of § 1983 claims. *Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 523 n.3 (4th Cir. 2000) (citing *Monell*, 436 U.S. at 696).

Case 1:20-cv-00092-LCB-JLW   Document 32   Filed 03/23/21   Page 26 of 30

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted).

The Amended Complaint alleges that the School Board failed to train Defendant Carter on proper disciplinary procedures and Defendant Owen on confidentiality of personnel information. (ECF No. 9 ¶ 129.) Elsewhere in the Amended Complaint, Plaintiff also alleges that, despite the Hearing Officer's decision regarding the conduct of Defendant Carter, the School Board renewed her contract and still did not implement any training for Defendant Carter on the legal requirements for imposing disciplinary sanction. (*Id.* ¶ 103.) Plaintiff also alleges that the School Board had knowledge of a history of Defendant Carter's actions that resulted in procedural due process violations of multiple employees. (*Id.* ¶¶ 123, 140.) Plaintiff not only alleges that Defendant Carter had a pattern of violating the procedural due process employees were afforded under North Carolina law, but also that the School Board had a pattern of being indifferent to those violations. (*Id.* ¶ 104.)

Viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, the Court determines that she has sufficiently stated a claim for failure to train pursuant to § 1983. As such, the School Board's motion to dismiss with respect to Count II will be denied.

### C. Plaintiff's Failure to Supervise Claim

Finally, the School Board likewise asserts that Plaintiff has failed to plausibly allege actions demonstrating a deliberate indifference to the right of its employees, and therefore has not stated a claim of failure to supervise. (ECF No. 12 at 20.) While it is not clear whether

the law recognizes school board liability under § 1983 for a failure to supervise, supervisory liability principles have been applied previously to the analysis of claims of school board liability in North Carolina. *See W.E.T. v. Mitchell,* No. 1:06CV487, 2007 WL 2712924, at *10– *12 (M.D.N.C. Sept. 14, 2007). "Generally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse." *Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir. 1983). The Fourth Circuit does recognize that supervisory officials may be liable under § 1983, because "that liability is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Shaw v Stroud,* 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Slakan v. Porter,* 737 F.2d 368, 372–73 (4th Cir. 1984)). To show supervisory liability under § 1983, a plaintiff must provide evidence

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and
>
> (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw,* 13 F.3d at 799. "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington,* 717 F.2d at 936.

Here Plaintiff has alleged that the School Board knew that Defendant Carter withheld teachers' pay without due process. (ECF No. 9 ¶ 100.) Plaintiff has further alleged that the School Board's response was inadequate and demonstrated deliberate indifference by stating

28

that they "turned a blind eye" and renewed Defendant Carter's contract even after receiving information that she had violated Plaintiff's rights. (*Id.* ¶¶ 100, 103.) Finally, Plaintiff alleges that the School Board's pattern of failing to supervise Defendant Carter resulted in harm to her constitutional interests. (ECF No. 9 ¶¶ 100, 104, 125, 138,143)

Viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, the Court determines that she has pleaded sufficient facts to state a claim for failure to supervise pursuant to § 1983. As such, the School Board's motion with respect to Count III of the Amended Complaint will be denied.

## V. CONCLUSION

For the reasons stated above, the Court will deny Individual Defendants' motion to dismiss Counts I and V of Plaintiff's Amended Complaint. Further, the School Board's motion to dismiss will be denied in its entirety. Finally, Count IV of the Amended Complaint will be dismissed, as Plaintiff brought her claim outside of the statutory time period allowed for bringing a slander per se claim, and this claim does not relate back to her original filing.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendant Caswell County School Boards' Motion to Dismiss, (ECF No. 11), is DENIED.

IT IS FURTHER ORDERED that Individual Defendants' Motion to Dismiss, (ECF. No. 20), is GRANTED in part and DENIED in part. Individual Defendants' motion is DENIED

with respect to Counts I and V of the Amended Complaint and further to the extent Defendant seeks dismissal based on lack of personal jurisdiction. Individual Defendants' motion is GRANTED with respect to Count IV of the Amended Complaint. Count IV of Plaintiff's Amended Complaint is hereby dismissed.

This, the 23rd day of March 2021.

/s/ Loretta C. Biggs
United States District Judge