IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRANDI MATHIS, )
)
        Plaintiff, )
)
v. ) 1:20CV92
)
CASWELL COUNTY SCHOOLS )
BOARD OF EDUCATION, *et al.*, )
)
        Defendants. )
)

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court are cross motions seeking summary judgment[1], (ECF Nos. 54; 58), as well as several motions to seal and strike,[2] (ECF Nos. 63; 64; 69; 73; 82; 85). For the reasons stated herein, Defendants' motion for summary judgment will be granted, Plaintiff's motion for partial summary judgment will be denied, and the motions to seal and strike will be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff is a science teacher formerly employed by Defendant Caswell County Schools Board of Education ("Defendant Board"). (ECF Nos. 54-6 at 131:24-25; 60-1 ¶¶ 5, 7.) Defendant Sandra Carter is the Superintendent for Caswell County Schools. (ECF No. 54-2

---

[1] Defendants have filed a motion for summary judgment, (ECF No. 54), while Plaintiff has filed a motion for partial summary judgment (ECF No. 58).

[2] Plaintiff's Amended Motion for Leave to File Documents Under Seal, (ECF No. 63); Defendants' Motion to Strike or Seal, (ECF No. 64); Defendants' Motion to Strike Expert Reports and Testimony, (ECF No. 69); Defendants' Motion to Seal, (ECF No. 73); Plaintiff's Second Amended Motion for Leave to File Documents Under Seal, (ECF No. 82); and Defendants' Second Motion to Seal, (ECF No. 85).

¶ 2.)  Defendant Wayne Owen is a Caswell County School Board member.  (ECF No. 54-3 ¶ 2.)  Defendant Shannon Apple, formerly Shannon Gammon,[3] served as an assistant principal of Plaintiff's school.  (ECF No. 60-7 at 13.)  Plaintiff began working for Defendant Board in around 2007 and was later designated as a "career status" teacher.  (ECF Nos. 54-6 at 26:8; 60-1 ¶ 44.)  As a career status teacher, Plaintiff was no longer hired under an annual contract, was able to keep her job indefinitely, and was protected from termination by certain procedural protections.  (ECF No. 54-6 at 26:15–27:5); *see also* N.C. Gen. Stat. § 115C-325(a)(1a), (e)–(n).

Plaintiff attended a professional development event on March 21, 2019.  (ECF No. 60-1 ¶ 10.)  After the event, participants complained to facilitators that Plaintiff acted unprofessionally.  (*See* ECF No. 54-2 at 6–8.)  These complaints were relayed to Superintendent Carter via email on March 25, 2019.  (*Id.*)  One email states that Plaintiff and two other teachers drank margaritas at lunch, were late from lunch, were "loud, rude, and disrespectful after lunch," and complained about the quality of the professional development.  (*Id.* at 6–7.)  Another states that the three teachers worked on school work during professional development sessions, drank beer at lunch, were "overly chatty, giddy, and laugh-y" after lunch, and left the session early.  (*Id.* at 8.)  Plaintiff disputes these accounts and avers that she was not "loud, rude, [or] disrespectful," did not drink margaritas at lunch, and "appropriately engaged" and actively participated in the professional development sessions.  (ECF No. 60-1 ¶ 14.)  She does state that she worked on schoolwork between sessions, drank one beer at lunch, was approximately ten minutes late returning from lunch, and left the event approximately ten minutes early.  (ECF No. 54-6 at 34:20–35:9; *id.* at 227–29.)  She felt the

---

[3] At the time the Amended Complaint was filed, Defendant Apple's legal name was Shannon Gammon.  She has since married and changed her last name to Apple.  (ECF No. 56 at 1 n.1.)

event was geared toward elementary teachers and was not helpful for high school students but did not intend for her criticism to be disrespectful. (*Id.* at 229.)

Carter and Plaintiff's principal met with Plaintiff on March 25, 2019 and informed her of the complaints. (ECF No. 60-1 ¶¶ 12–13.) Carter informed Defendant Board about the accusations and her intent to discipline Plaintiff at its monthly meeting that evening. (ECF No. 60-7 at 551–52.) Plaintiff testifies that one Board member present for the meeting later told her that Carter characterized Plaintiff and the other two teachers as "a bunch of drunks" who deserved to be fired. (ECF No. 54-6 at 108:11-18.) On March 27, 2019, Carter issued a letter of reprimand to Plaintiff and suspended her without pay on March 28. (ECF No. 60-1 ¶ 19.) Word of the suspension quickly spread throughout Plaintiff's school and local community. (*See, e.g.*, ECF Nos. 60-3 ¶¶ 9–12; 60-7 at 554.) Although no direct evidence shows that Carter or any Board member disclosed the details of the allegations against Plaintiff, Plaintiff's evidence does support that Defendant Apple learned of the suspension from her mother, who is married to Defendant Owen, a Board member. (ECF Nos. 60-3 ¶¶ 12–13; 60-7 at 554.)

Plaintiff appealed the suspension and reprimand on April 11, 2019. (ECF No. 61-26 at 1.) After a full hearing on June 19, 2019, the Hearing Officer issued a decision on July 24, 2019. (ECF No. 61-29 at 17.) He found that "sufficient grounds do exist to warrant <u>some</u> disciplinary action and it should be up to the Board of Education to determine whether that disciplinary action should include a one (1) day suspension without pay" and a letter of reprimand, but Carter, as superintendent, cannot suspend a teacher without prior approval from the Board. (*Id.* at 15–17.) Thus, the Hearing Officer required Carter to "decide whether she intends to proceed further with" recommending discipline. (*Id.* at 17.)

3

On August 9, 2019, Carter notified Plaintiff that she intended to submit a written recommendation for disciplinary suspension without pay to the Board. (ECF No. 54-2 ¶ 13; *id.* at 45.) Plaintiff objected to Carter's notice as untimely and requested a hearing before the Board, (*id.* at 46), which the Board initially scheduled for September 9 and rescheduled for September 26, 2019, (ECF No. 54-4 ¶ 7–8). Plaintiff "believed the Board planned to uphold Dr. Carter's recommendation for my suspension without pay," that the Board "did not care about my legal rights," and that "it would be futile to participate in the hearing as the Board's decision was predetermined," (ECF No. 60-1 ¶ 40), although she did not know for sure whether the Board would adopt Carter's recommendation, (ECF No. 54-6 at 51:22–52:4 (stating that she could not "speculate" as to whether Carter's recommendation would have been approved)).

Plaintiff resigned on August 26, 2019, effective September 25, 2019. (ECF No. 60-1 ¶ 43.) She viewed resignation as "the only way to protect [her] professional career." (ECF No. 54-6 at 49:10-15.) Plaintiff obtained employment teaching science in a neighboring county before resigning. (*Id.* at 129:16-22.) She receives higher pay and identical health insurance at her new job. (*Compare* ECF No. 54-5 at 3, *with* ECF No. 54-6 at 133:12–134:6, 135:24–136:12.) However, due to her resignation, she is no longer a career status teacher and cannot regain that status under North Carolina law. (ECF No. 60-1 ¶ 44.)

## II. SUMMARY JUDGMENT

Defendants argue that they are entitled to summary judgment on all of Plaintiff's remaining claims. (ECF No. 54 at 1.) Plaintiff argues that she is entitled to summary judgment on Count I (Violation of the Fourteenth Amendment – Procedural Due Process). (ECF No. 58 at 1.)

4

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations and quotations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569, and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials

cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

### A. Section 1983

The Fourteenth Amendment to the U.S. Constitution makes it unlawful for any state to "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. 42 U.S.C. § 1983 creates a private cause of action for damages against any person "who, under color of state law causes the violation of another's federal rights." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting 42 U.S.C. § 1983). The plaintiff bears the burden to show that defendant "deprived plaintiff of a right secured by the Constitution and laws of the United States." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (2009). To survive summary judgment, Plaintiff must therefore show that she (1) had a protected property or liberty interest, and (2) Defendants deprived her of such interest under color of state law (3) without due process.

Here, Plaintiff argues on summary judgment that she suffered two distinct constitutional deprivations: loss of career employee status and loss of her reputation. (ECF No. 72 at 4, 9.)

#### 1. Defendants did not deprive Plaintiff of her career status

First, Plaintiff claims that she "had a property right to her career status." (ECF No. 72 at 4–8.) Under North Carolina law, a teacher who was awarded career status by her local school board prior to August 1, 2013, is a "career employee." N.C. Gen. Stat. § 115C-325(a)(1a). Career employees enjoy certain protections, including substantive and procedural limits on termination and demotion. *Id.* § 115C-325(e)–(n). These career status protections "have a financial impact that is strongly analogous to, and in some ways directly implicates,

6

the vested contractual rights to benefits as a form of deferred compensation." *N.C. Ass'n of Educators, Inc. v. State*, 776 S.E.2d 1, 11 (N.C. Ct. App. 2015), *aff'd as modified*, 786 S.E.2d 255 (N.C. 2016). Thus, North Carolina considers career employee status to be property under the state constitution. *Id.* at 17–18; *see also Crump v. Bd. of Educ. of the Hickory Admin. Sch. Unit*, 392 S.E.2d 579, 584 (N.C. 1990) (holding that "a career teacher . . . ha[s] a cognizable property interest in his continued employment" and is "entitled to a hearing according with principles of due process").

Plaintiff argues that she lost her career employee status due to a constructive termination. (ECF No. 72 at 4–8.) "Constructive discharge occurs 'when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997) (quoting *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984)). "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004)). It is insufficient to show "merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (quoting *Blistein v. St. John's Coll.*, 74 F.3d 1459, 1468 (4th Cir. 1996)).

Here, there is no evidence that Defendants deprived Plaintiff of her career employee status without due process. Plaintiff lost her career employee status when she voluntarily resigned on August 26, 2019. At that time, Defendant Carter had recommended a suspension

and Defendant Board had scheduled a hearing. Neither of these actions can be construed as a deliberate effort to make Plaintiff resign, nor could a reasonable jury find that these actions, even when compounded by Carter's earlier procedural violations, made Plaintiff's working conditions so intolerable as to force her to resign. Indeed, Plaintiff requested the hearing, but she ultimately resigned to avoid attending it. As she admitted during deposition, her fear that the Board would adopt the recommended suspension was pure "speculation." Plaintiff's expert[4] offers that "Dr. Carter's and the Board's actions over time and in this case indicate that Caswell County Schools employees would be correct in assuming that they would not be judged fairly in employee disciplinary proceedings." (ECF No. 77-1 at 3.) However, that conclusion appears to be based solely on the Board's failure to correct Carter's failure to provide Plaintiff with the process initially due. (*Id.* at 3, 41–42.) There is no evidence that the Board would not properly consider the evidence presented at a hearing, or that Plaintiff's fear that she would be suspended was sufficient to cause a constructive termination.

This Court concludes that Plaintiff was not constructively terminated as a matter of law. Thus, Defendants did not violate her property interest in her career employee status.

### 2. <u>Defendant did not violate Plaintiff's constitutionally protected liberty interest in reputation without due process</u>

Second, Plaintiff argues that Defendants damaged her reputation in violation of her liberty interests. (ECF No. 59 at 22–26.) A constitutionally protected liberty interest is implicated where a public employee's supervisors "made charges against him that 'might seriously damage his standing and associations in his community' or otherwise 'imposed on

---

[4] Defendants have moved to exclude the testimony of Plaintiff's expert, Dr. Carl Lashley. (ECF No. 69.) As discussed below, this Court finds that, even if this information is admitted, Plaintiff has failed to establish a genuine issue of material fact as to her claims.

8

him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.'" *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573–75 (1972)). The liberty interest at issue is not the employee's reputation itself, but her freedom to pursue other employment. *Paul v. Davis*, 424 U.S. 693, 701 (1976) ("While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."). In order to interfere with an employee's liberty interest in future employment, such charges must be false, *Codd v. Velger*, 429 U.S. 624, 627 (1977), public, *Bishop v. Wood*, 426 U.S. 341, 348–49 (1976), and "made in the course of a discharge or significant demotion," *Stone*, 855 F.2d at 172–73 n.5 (citing *Paul*, 424 U.S. at 710–11). If a public employer's charges against an employee meet these requirements, the Fourteenth Amendment requires the state to provide the employee with notice and a hearing "to provide the person an opportunity to clear [her] name." *Roth*, 408 U.S. at 573 n.12.

Here, Plaintiff argues that Carter defamed her in violation of her constitutionally protected liberty interest, but none of the evidence cited by Plaintiff, even when taken in the light most favorable to her, supports such a conclusion. Plaintiff cites statements made by Carter to Plaintiff and her principal on March 25, 2019, to the Board during its meeting that evening, and to the Board in an email on March 29, 2019. (ECF No. 59 at 23.) In the first instance, Carter merely relayed complaints made by others about Plaintiff's behavior privately to Plaintiff and her principal. (ECF No. 60-1 ¶ 13.) In the second, Carter informed the Board

9

privately during a closed session about the allegations and his intent to suspend Plaintiff. (ECF No. 60-7 at 551–52.) Plaintiff's evidence supports that Carter characterized Plaintiff and the other two teachers as "a bunch of drunks" during the meeting, but as this alleged characterization was made privately during a closed session, no evidence supports that this alleged statement infringed on Plaintiff's liberty interest in obtaining future employment. Third, Carter's May 29 email to the Board merely states that two employees were suspended. Since none of the evidence supports that Carter made a false, public, defamatory statement in the course of discharge or significant demotion, no reasonable jury could find that Carter violated Plaintiff's liberty interest.

Moreover, even if Defendants had violated Plaintiff's liberty interest in pursuing employment by publicly defaming her, Plaintiff was afforded the requisite "opportunity to clear [her] name." *Roth*, 408 U.S. at 573 n.12. Carter notified Plaintiff on March 25 of the allegations against her and reprimanded and suspended her on March 27, 2019. Plaintiff appealed the decision and participated in a full hearing on June 19, 2019. The Hearing Officer sided with Plaintiff and removed her reprimand and suspension on July 24, 2019. When Carter then again sought to suspend Plaintiff, she was able to request a second hearing before the Board. Because of this process, neither the reprimand or suspension were a part of Plaintiff's employment record when she applied for new employment in August 2019, and she was immediately hired to work in a neighboring county. The fact that Plaintiff elected not to attend the hearing scheduled in September 2019 does not render the process offered to her insufficient under the Due Process Clause.

Plaintiff offers expert testimony that Carter's initial suspension of Plaintiff harmed her career notwithstanding the Hearing Officer's consideration. (ECF No. 77-1 at 42–43.)

10

Case 1:20-cv-00092-LCB-JLW   Document 97   Filed 08/17/22   Page 10 of 19

Specifically, Plaintiff's expert reports that, going forward, Plaintiff may be required to disclose the initial suspension to future employers, despite that the Hearing Officer found that she was not afforded adequate process. (*Id.*) Even taking this report as true, Plaintiff has failed to show that Carter's initial discipline was defamatory, i.e., false. Plaintiff admitted to drinking a beer during lunch on March 21, 2019, returning to the professional development session late, and leaving early. The Hearing Officer and Plaintiff's own expert both found that consuming alcohol during a school-sponsored event may have violated school policy, and "[f]or this misconduct, some sanction is due." (ECF No. 77-1 at 39; *see also* ECF No. 54-2 at 41–42 (questioning "whether the consumption of one beer alone would warrant a one-day suspension without pay" but concluding that "[w]hen combined with other evidence presented at the Hearing, . . . there seems to be a reasonable basis for some type of punishment").) There is no evidence that Plaintiff's initial suspension was based on allegations that she disputes as false rather than these undisputed facts.

Moreover, Plaintiff has failed to cite any authority, and this Court knows of none, finding that an improper suspension can form the basis for a Fourteenth Amendment liberty interest violation. *See Paul*, 424 U.S. at 710 ("Certainly there is no suggestion . . . that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee."). Finally, Plaintiff has failed to identify a process that would better satisfy the Due Process Clause. Plaintiff received notice and a hearing. She presented evidence that her suspension was based on false allegations. The Hearing Officer removed the reprimand and suspension. Carter was prevented from reinstating the suspension without a hearing before the Board.

Consequently, the stigma of a suspension was removed from Plaintiff's record, and she was able to obtain employment teaching in a neighboring county for more money.

The Court finds that, even taking the evidence in the light most favorable to Plaintiff, Defendants did not violate Plaintiff's liberty or property interests without due process of law. Accordingly, Plaintiff's motion for partial summary judgment will be denied, and Defendants' motion for summary judgment will be granted as to Plaintiff's causes of action arising under § 1983.

## B. Negligence

Defendants next move for summary judgment with respect to Plaintiff's state-law negligence claims. (ECF No. 56 at 24–30.) They argue that (1) they are entitled to public official immunity, and (2) Plaintiff has failed to offer evidence sufficient to create a genuine issue of material fact as to her negligence claims. (*Id.*)

Under North Carolina law, "a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Meyer v. Walls*, 489 S.E.2d 880, 888 (N.C. 1997). School board members, superintendents, and school principals are all "public officials" who may be entitled to public official immunity. *See, e.g.*, *Webb v. Nicholson*, 634 S.E.2d 545, 547 (N.C. Ct. App. 2006); *Gunter v. Anders*, 441 S.E.2d 167, 171 (N.C. Ct. App. 1994), *on reh'g*, 444 S.E.2d 685 (N.C. Ct. App. 1994). Under public official immunity, a public official may be liable for negligence only where his conduct was "(1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate." *Smith v. Jackson Cnty. Bd. of Educ.*, 608 S.E.2d 399, 411 (N.C. Ct. App. 2005). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know

to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa*, 321 S.E.2d 888, 890 (N.C. 1984).

### 1. Defendant Carter is entitled to public official immunity

Plaintiff alleges that Carter was negligent in conducting her investigation and disclosing the details of the allegations against Plaintiff. (ECF No. 9 ¶¶ 161–64, 168–76.) These allegations allege mere negligence in the execution of Carter's official duties and are squarely barred by public official immunity. Carter's investigation of the allegations involved communicating with the individuals who initially reported the allegations, Plaintiff, and her two colleagues who were also accused of acting unprofessionally. Carter then disclosed the details of the allegations to Plaintiff, plaintiff's principal, and the Board. These actions were within her official duties as Superintendent in charge of discipline, (*see* ECF No. 54-2 ¶ 3), and there is no evidence that her actions were corrupt, malicious, in bad faith, or willfully and deliberately insufficient.

Plaintiff argues that Carter violated confidentiality because other individuals were present when she disclosed the allegations made against Plaintiff to her principal and the Board. (ECF No. 72 at 27.) To the extent that disclosure to these individuals was improper, however, it is clear from the record that it occurred during Carter's execution of her duties to investigate and inform plaintiff's principal and the Board, and no evidence supports that she included other individuals in her communications maliciously or willfully and wantonly.

Plaintiff also argues that Carter's investigation was woefully inadequate when compared to a lengthier investigation Carter conducted when a school bus driver was involved in an accident while transporting students and later tested positive for marijuana. (*Id.* at 22–23; *see also* ECF No. 60-5 ¶¶ 8–12.) The bus driver was put on administrative leave with pay after the

13

incident. However, the mere fact that Carter spent more time investigating an unrelated and dissimilar case, as well as the difference in outcomes, is insufficient on its own to show that Carter acted with bad faith or malice toward Plaintiff in investigating this case. Therefore, Carter is entitled to public official immunity and summary judgment with regard to Plaintiff's negligence claims against her.

        2.      <u>No evidence supports that Owen and Apple caused injury to Plaintiff</u>

Plaintiff alleges that Defendants Owen and Apple breached their duties of confidentiality. (ECF Nos. 9 ¶¶ 165–67; 72 at 28–29.) Caswell County School Board of Education Policy 200 requires Board members to "respect the confidentiality of information that is privileged under applicable law and refrain from unauthorized disclosure of matters discussed in closed session." (*See* ECF No. 56 at 26.) School administrators are similarly instructed to keep employee personnel records confidential. (*Id.*) North Carolina law further requires that information contained in personnel files, including discipline, "is confidential." N.C. Gen. Stat. § 115C-321(a).

Plaintiff argues that Owen breached this duty by discussing information he learned about Plaintiff during a closed session of the Board with his wife, who then told Apple. (ECF No. 72 at 28–29.) This theory is based on a conversation between Apple and Officer Brian Jones, a school resource officer, in which Apple stated that her mother, Mrs. Owen, told her that Plaintiff had been suspended. (ECF No. 60-3 ¶¶ 12–13; *see also* ECF No. 60-7 at 554.) Assuming for a moment that Mr. Owen did tell his wife, that Mrs. Owen told Apple, and Apple told Officer Jones, there is no evidence that this disclosure caused Plaintiff any harm because Jones already knew about the suspension when the conversation with Apple occurred. (ECF No. 60-7 at 554.) Plaintiff first discussed the allegations with Jones on March 25, and

14

then Leslie Jenkins, a science teacher, told him that she "heard [Plaintiff] got suspended." (*Id.*) Jenkins, in turn, heard the news from her students. (ECF No. 60-6 ¶ 10.) Jones spoke with Apple only after hearing about the suspension from Jenkins. (ECF No. 60-7 at 554.) Plaintiff's remaining affiants all heard the news from other teachers, students, or members of the community. (*See* ECF Nos. 60-3 ¶ 9; 60-5 ¶ 20; *see also* ECF Nos. 60-1 ¶ 22; 60-4 ¶ 16.) Plaintiff appears to believe that Defendants Owen and Apple are the original source of the information that reached teachers, students, and the community, but this belief is purely speculative and does not create a genuine issue of material fact. (*See* ECF No. 54-6 at 83:25–84:22, 95:24–96:16.)

Since there is no evidence that Defendants Owen or Apple's alleged disclosure of Plaintiff's suspension to others caused her harm, summary judgment will be granted to Defendants on Plaintiff's negligence claims.

## III.   MOTIONS TO STRIKE

Defendant moves to strike portions of declarations submitted in support of Plaintiff's Motion for Partial Summary Judgment, or in the alternative, to seal said portions. (ECF No. 64.) Defendant also moves to strike the report of Plaintiff's expert. (ECF No. 69.) Defendant argues that these documents would not be admissible in evidence and therefore cannot be relied upon to create a genuine issue of material fact on summary judgment. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter." Fed. R. Civ. P. 12(f). An evidentiary document is not a pleading. Pursuant to the Local Rules of this district, "[r]ather than filing a motion to strike, a party may assert evidentiary objections in its response or reply memorandum." LR7.6. "If a separate motion to strike is filed asserting evidentiary objections, the motion to strike may be summarily denied by the Court, and any issues instead addressed in the ruling on the underlying motion." *Id.* Here, as discussed in Part II, *supra*, the Court finds that Plaintiff has failed to create a genuine issue of material fact as to her claims even if the challenged evidence were admitted. Thus, the Court need not reach Defendants' evidentiary objections and will deny their motions to strike as moot. The Court will consider their alternative requests to seal. *See* Part IV, *infra*.

### IV. MOTIONS TO SEAL

Finally, the parties have filed motions to seal. Plaintiff seeks to seal five exhibits in their entirety and eight exhibits with redactions "to protect the confidential personnel information of non-parties." (ECF No. 82 at 2.) Defendants seek to seal Plaintiff's response to their motion for summary judgment and exhibits filed by Plaintiff that contain confidential school employee information, irrelevant and conclusory information, hearsay, and documents that are unsworn and/or unauthenticated. (ECF Nos. 64; 73; 85.) Plaintiff argues that Defendants' motion is not narrowly tailored and that she can redact personally identifying information without sealing entire documents. (ECF No. 78 at 5–6.)

The public has a right, derived from both common law and the First Amendment, "of public access to documents or materials filed in a district court." *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). When the subjects of a motion to seal are documents attached to a summary judgment motion in a civil case, "the more rigorous First Amendment standard" governs the court's analysis. *Id.* at 576 (quoting *Rushford v. New Yorker*

16

*Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). Under this standard, "a district court may restrict access 'only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest.'" *Id.* at 575 (quoting *Stone*, 855 F.2d at 180). "Public access serves to promote the trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014). "Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." *Id.* Thus, before granting a motion to seal, a court must "(1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) . . . state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives." *Id.* at 272.

"The reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judicial documents." *Rushford*, 846 F.2d at 254. Discovery, "which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court." *Washington Post*, 386 F.3d at 576 (quoting *Rushford*, 846 F.2d at 252). Thus, the party seeking to seal documents bears the burden to show that such relief does not violate the First Amendment even if the documents were subject to a pretrial discovery protective order. *Id.* at 575.

Here, the parties argue that the documents they identify contain private employment information about non-parties. Courts generally recognize a compelling governmental interest in protecting the privacy of non-parties, *see Robinson v. Bowser*, No. 12CV301, 2013 WL

17

3791770, at *3–4 (M.D.N.C. July 19, 2013), and North Carolina law instructs that certain information contained in employee personnel files be kept confidential, N.C. Gen. Stat. §§ 115C-319, 115C-321. Plaintiff's proposal is to seal in their entirety non-party personnel records, (*see, e.g.*, ECF Nos. 61-35–61-37; 61-45; 61-48), and otherwise redact identifying non-party personnel information. (ECF No. 82.) This proposal is narrowly tailored to protect the privacy of non-parties, no less drastic alternatives are available, and Plaintiff's motion has been publicly docketed since January 18, 2022, without objections from the public. Plaintiff's motion will therefore be granted.

Defendants seek in their motions, (ECF Nos. 64, 73 and 84), to seal in their entirety all documents that contain private information about non-parties. This solution is overly broad and cannot be granted consistent with the First Amendment right to public access. Rather, the parties will be instructed to file unsealed, redacted copies of their exhibits with any information that could be used to identify non-parties redacted, including names, positions, and familial relationships to parties in this case.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 54), is **GRANTED**; and Plaintiff's Motion for Partial Summary Judgment, (ECF No. 58), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Expert Reports and Testimony, (ECF No. 69), is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike or Seal, (ECF No. 64), is **GRANTED** in part, **DENIED** in part, and **DENIED AS MOOT** in part in accordance with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal, (ECF No. 73), and Second Motion to Seal, (ECF No. 85), are **GRANTED** in part and **DENIED** in part in accordance with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that Plaintiff's Second Amended Motion for Leave to File Documents Under Seal, (ECF No. 82), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Motion for Leave to File Documents Under Seal, (ECF No. 63), is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the parties shall file unsealed, redacted versions of the documents identified in their motions in accordance with this Memorandum Opinion within 10 days of publication of this Order.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

This, the 17th day of August 2022.

/s/ Loretta C. Biggs
United States District Judge
